UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY LEE MARTIN,

        Plaintiff,

v.

UNKNOWN RANDALL,
UNKNOWN ROBERTS,
and UNKNOWN BENNET,

        Defendants.
_____/

Case No. 1:22-cv-123

Hon. ROBERT J. JONKER

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Ricky Lee Martin ("Martin"), a prisoner in the custody of the Michigan Department of Corrections (MDOC).[1] Martin sued Corrections Officer (CO) Carlos Randall (named as "Unknown Randall"), CO Ethan Roberts (named as "Unknown Roberts"), and Sgt. Michael Bennett (named as "Sergeant Unknown Bennet"). This matter is now before the Court on defendants' motion for (partial) summary judgment on the basis of exhaustion (ECF No. 29).

    **I.**    **Martin's allegations**

The incidents alleged in this lawsuit occurred at the MDOC's Ionia Correctional Facility (ICF). Martin's complaint is based on the following alleged incidents.

---

[1] The Court notes that Martin had counsel during portions of this lawsuit. Attorney Racine M. Miller entered an appearance on behalf of Martin (ECF No. 10), moved to withdraw as counsel because she "was blind-sided by the actions taken by Plaintiff" (ECF No. 14) and then withdrew her motion to withdraw (ECF No. 26). About four months later, Miller moved to withdraw again because "professional considerations require termination of the representation" (ECF No. 36). The Court granted the second motion to withdraw (ECF No. 39).

1

**April 3, 2021**. CO Randall called Martin a "rat bitch" which put him at risk for assault by other prisoners.  Compl. (ECF No. 1, PageID.6-7).

**April 12, 2021**. CO Randall called Martin a "rat" (referring to "that rat shit you did over in (4)") and Martin talked with Sgt. Bennett about it.  *Id*. at PageID.7-8.

**April 13, 2021**.  On this date, Martin spoke to Sgt. Bennett and "Again explained to him the issues of being labled [sic] a rat-and-snitch could bring him [sic] and that plaintiff feard [sic] for his safety by C/O Randall and that he feared C/O Randall anger [sic] with him turning into violence against him."  *Id*. at PageID.8 (emphasis omitted).

**April 19, 2021**. CO Randall called Martin a "a Bitch Rat Ass" and told Martin "I can't wait until they stab your fake gangbanging ass, that's why you [sic] not in the hole now," and linked Martin with "that rat Lawson."  *Id*. (emphasis omitted).

**April 20, 2021**. Martin complained to Sgt. Bennett about CO Randall's: threats made against his life; rumors that he was a rat; that he was a "gangbanger"; and that he was involved with another prisoner ("that rat Lawson").  *Id*. at PageID.10.

**April 25, 2021**. Martin's allegations are not clear.  Based on the allegations, it appears:  that "a physical engagement took place;" that CO Randall and CO Roberts tasered Martin; that Martin "ran away" from prisoner Ford; that Martin was tasered again and fell to the ground; that while CO Randall and CO Roberts stood over Martin, prisoner Ford was allowed to walk on top of Martin and strike him in the face and head.  *Id*. at PageID.11-12.  During a later misconduct hearing, "Prisoner Ford #877858 admitted that 'C/O's Randall told/directed him to assault plaintiff Martin'".  *Id*. at PageID.12 (emphasis omitted).

2

Based on these allegations, Martin set out six claims against defendants.[2]

**Claim I**. CO Randall violated his Eighth Amendment rights by spreading a rumor that Martin was a "snitch/rat". *Id*. at PageID.14 (¶ 28(1)).

**Claim II**. CO Randall acted with deliberate indifference when his threat about Martin being "stabbed" turned to violence. *Id*. at PageID.15 (¶ 28(2)).

**Claim III**. CO Randall failed to protect Martin from prisoner Ford when Martin "was on the ground, unconscious and restrained by two officers". *Id*. at PageID.15 (¶ 28(3)).

**Claim IV**. CO Roberts failed to protect Martin from prisoner Ford when Martin was on the ground. *Id*. at PageID.15 (¶ 29).

**Claim V**. Sgt. Bennett violated Martin's Eighth Amendment rights for "inadequate supervision of subordinates", knew that Martin feared for his life, and acted with deliberate indifference. *Id*. at PageID.15-16 (¶ 30).

**Claim VI**. CO Randall violated Martin's Eighth Amendment rights "by seeking out another prisoner to 'stab and assault' plaintiff Martin for a payment in promises and rewards". *Id*. at PageID.16 (¶ 31).

For his relief, Martin seeks compensatory and punitive damages. *Id*. at PageID.16.

**II.      Legal standard**

**A.      Summary judgment**

Defendants moved for partial summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] The Court identified these claims based on the "Legal Claims" section of Martin's complaint (PageID.14-16). The Court notes that defendants summarized Martin's claims based on the dates of the incidents. *See* Defendants' Brief (ECF No. 30, PageID.154).

3

Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### III.  Discussion

Defendants identified four grievances relevant to Martin's claim.

### A.  Grievance ICF-21-04-458-28c ("458")

In Grievance 458, Martin stated that on April 3, 2021 CO Randall called him a "rat."  In addition, Martin referred to an "officer coming to my cell door on (4-2-21) and asking to sign off on a grievance while Randal was present and I refused", that one or both of these events was "clear retaliation" and harassment; that "I'm being denied shower, JPay and order store" by officers; and "I'm asking for inspectors to investigate."  *See* Grievance 458 (ECF No. 30-3, PageID.198).  The MDOC rejected the grievance because it contained multiple issues:

> Your grievance is being rejected for the reason that you are in violation of PD-03-02-130.  This procedure states that you must limit your grievance to one (1) issue per grievance.  Grievance rejected at first step.

*Id*. at PageID.199.  The MDOC upheld the rejection at Steps II and III.  *Id*. at PageID.195-197.

Martin did not properly exhaust Grievance 458 because the grievance was rejected for raising multiple issues contrary to Policy Directive 03.02.130.  *See Brooks v. Hardy*, No. 1:16-cv-1336, 2017 WL 6048822 at *2 (W.D. Mich. Dec. 6, 2017) ("As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.") (internal quotation marks omitted).  *See also*, *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  This is the only grievance which referred to the April 3, 2021 incident.  Accordingly, CO

6

Randall should be granted summary judgment on the April 3, 2021 incident alleged in Claim I of the complaint.

        **B.**        **Grievance ICF-04-544-17a ("544")**

In Grievance 544, Martin set out a dispute with CO Randall which occurred on April 12, 2021: Martin told CO Randall that he wanted "J-pay and store machine"; Randall ignored him; Martin called Randall; Randall told Martin, "After that rat shot [sic] you did over in 4 with Henderson and DeBoer, you ain't got shit coming from me"; Martin told Sgt. Bennett what happened and Bennett said "he would take care of it"; that CO Randall told Martin, "Your Bitch Ass you ain't got shit coming"; and, that the next morning Martin stated that CO Randall "tried to provoke me by calling me a 'coward'". Grievance 544 (ECF No. 30-3, PageID.188). After an investigation, the respondent denied the grievance, finding "insufficient evidence to support the allegations made by prisoner Martin." *Id*. at PageID.189. The grievance was denied at Steps II and III. *Id*. at PageID.185-187.

Defendants concede that Martin properly exhausted Grievance 544. *See* Defendants' Brief (ECF No. 30, PageID.161); Defendants' Reply (ECF No. 44, PageID.286). While defendants construe this grievance as directed only against CO Randall, the Court disagrees. As discussed, this grievance included claims that CO Randall called Martin a rat (Claim I) and that Sgt. Bennett told Martin that "he would take care of it" (Claim V). Grievance 544, PageID.188. Based on this record, Grievance 544 exhausted Martin's claims against both CO Randall and Sgt. Bennett for the April 12, 2021 incident. Accordingly, defendants' motion should be denied as to Claim V alleged against Sgt. Bennett.

7

### C.  Grievance ICF-21-04-573-28e ("573")

In Grievance 573, Martin stated that on April 19, 2021, CO Randall called him a "rat" and threatened him. Grievance 573 (ECF No. 30-3, PageID.183). Defendants did not attach the response to this grievance.[3]  The MDOC denied the grievance at Step II and referenced the Step I response as follows "Step I response by Sgt. Coscarelli is both adequate and appropriate to address the allegations or concerns presented in the grievance." Grievance 573 a PageID.182. The grievance was rejected at Step III for the following reason: "Missing Step I response." *Id*. at PageID.180-181. In their brief, defendants do not cite a policy directive to support this rejection. Rather, they state that "ICF-573 was rejected because Martin did not include the Step I response (which is necessary for the Step III grievance office to review the Step III appeal)". Defendants' Brief at PageID.163. Based on this record, the Court concludes that the MDOC's Step III rejection – which did not cite a legal basis for the rejection – does not preclude proper exhaustion. *See Brooks*, 2017 WL 6048822 at *2. *See also*, *Margosian v. Martison*, No. 1:21-cv-1061, 2023 WL 1442426 at *2 (W.D. Mich. Feb. 1, 2023) (under the relevant Policy Directive 03.02.130 ¶ H, courts have concluded that the failure to include grievance responses in the Step III appeal does not preclude proper exhaustion). Accordingly, defendants' motion should be denied as to the claims against CO Randall arising from Grievance 573, which appear as part of Claim I and Claim II of the complaint.

### D.  Grievance ICF-2104-613-28i ("613")

In Grievance 613, Martin stated (in his words):

> On 4-25-21 while a altercation was taking place in Unit-5 "<u>OFFICER RANDAL</u>" and another was talking me, I fell to the ground, while on the ground, unable to move, and being tazed with (2) officers standing over me, they/Randal allowed a inmate to come/walk ono the shower area and began to assault me while

---

[3] The Court notes that defendants attached a "Step I Grievance Response Supplemental Form" for Grievance ICF-20-21-0405-4417A (ECF No. 30-3, PageID.184).

8

> Im unconscious and unable to defend myself . . . Officers and Lt. Conklin fail to protect me from being assaulted while subdued by officers and being tazed for an extended amount of time . . .
>
> <u>This Grievance</u> is for Officer Randal failing to protect me while having control of my person on the ground while tazing me . . . This is (1) Issue and Im asking for video footage

Grievance 613 (ECF No. 30-3, PageID.193) (emphasis in original).

The MDOC rejected Grievance 613 because Martin failed to attempt to resolve the issue with staff as required by Policy Directive 03.02.130. *Id*. at PageID.194. The MDOC upheld the rejection at Steps II and III. *Id*. at PageID.190-192. Martin did not properly exhaust Grievance 613 which claimed that CO Randall and CO Roberts were part of the April 25, 2021 assault involving prisoner Ford. *See Brooks*, 2017 WL 6048822 at *2; *see also*, *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, CO Randall and CO Roberts should be granted summary judgment arising from the April 25, 2021 incident, which is alleged in Claim III and Claim IV of the complaint.

### E.    No grievance supporting Claim VI of the complaint

Finally, based on this record, there is no evidence that Martin exhausted any grievances to support Claim VI alleged in the complaint, *i.e.*, that on April 25, 2021, CO Randall violated Martin's Eighth Amendment rights "by seeking out another prisoner to 'stab and assault' plaintiff Martin for a payment in promises and rewards". *Id*. at PageID.16. Accordingly, CO Randall should be granted summary judgment as to Claim VI alleged in the complaint.[4]

---

[4] Martin appears to base this claim on prisoner Ford's misconduct hearing report, in which prisoner Ford pled guilty to fighting. *See* Class I Misconduct Hearing Report (ECF No. 1-6, PageID.46). The Administrative Law Judge stated that while prisoner Ford "[p]leads guilty to the charge" he also "indicates at the hearing that Randall told him to do it." *Id*.

### IV.     Recommendation

For these reasons, I respectfully recommend that defendants' motion for partial summary judgment (ECF No. 29) be **GRANTED** as to Claims III, IV and VI and that defendant Roberts be dismissed from this action.

I further recommend that defendants' motion be **GRANTED** as to the April 3, 2021 incident which is part of Claim I.

I further recommend that defendants' motion be **DENIED** as to Claims II and V.

I further recommend that defendants' motion be **DENIED** as to the April 12, 2021 incident which is part of Claim I.


Dated:  January 19, 2024              /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).