UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY LEE MARTIN,

        Plaintiff,

v.

UNKNOWN RANDALL,
UNKNOWN ROBERTS,
and UNKNOWN BENNET,

        Defendants.
_____/

Case No. 1:22-cv-123

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Ricky Lee Martin ("Martin"), a prisoner in the custody of the Michigan Department of Corrections (MDOC).[1] Martin sued Corrections Officer (CO) Carlos Randall, CO Ethan Roberts, and Sgt. Michael Bennett (named as "Sergeant Unknown Bennet"). CO Roberts has been dismissed. This matter is now before the Court on defendants Randall and Bennett's motion for summary judgment (ECF No. 51).

        **I.**        **Martin's allegations**

Martin's complaint is based on the following alleged incidents which occurred at the MDOC's Ionia Correctional Facility (ICF):

---

[1] The Court notes that Martin had counsel during portions of this lawsuit. Attorney Racine M. Miller entered an appearance on behalf of Martin (ECF No. 10), moved to withdraw as counsel because she "was blind-sided by the actions taken by Plaintiff" (ECF No. 14) and then withdrew her motion to withdraw (ECF No. 26). About four months later, Miller moved to withdraw again because "professional considerations require termination of the representation" (ECF No. 36). The Court granted the second motion to withdraw (ECF No. 39).

1

April 3, 2021. CO Randall called Martin a "rat bitch" which put him at risk for assault by other prisoners. Compl. (ECF No. 1, PageID.6-7).

April 12, 2021. CO Randall called Martin a "rat" (referring to "that rat shit you did over in (4)") and Martin talked with Sgt. Bennett about it. *Id*. at PageID.7-8.

April 13, 2021. Martin spoke to Sgt. Bennett and "Again explained to him the issues of being labled [sic] a rat-and-snitch could bring him [sic] and that plaintiff feard [sic] for his safety by C/O Randall and that he feared C/O Randall anger [sic] with him turning into violence against him." *Id*. at PageID.8 (emphasis omitted).

April 19, 2021. CO Randall called Martin  "a Bitch Rat Ass" and told Martin "I can't wait until they stab your fake gangbanging ass, that's why you [sic] not in the hole now," and linked Martin with "that rat Lawson." *Id*. (emphasis omitted).

April 20, 2021. Martin complained to Sgt. Bennett about CO Randall's: threats made against his life; rumors that he was a rat; that he was a "gangbanger"; and that he was involved with another prisoner ("that rat Lawson"). *Id*. at PageID.10.

April 25, 2021. Martin's allegations are not clear.  It appears: that "a physical engagement took place"; that CO Randall and CO Roberts tasered Martin; that Martin "ran away" from prisoner Ford; that Martin was tasered again and fell to the ground; and, that while CO Randall and CO Roberts stood over Martin, prisoner Ford was allowed to walk on top of Martin and strike him in the face and head. *Id*. at PageID.11-12.  During a later misconduct hearing, "Prisoner Ford #877858 admitted that 'C/O's Randall told/directed him to assault plaintiff Martin'". *Id*. at PageID.12 (emphasis omitted).

As discussed, *infra.*, Martin was charged with two Class I Misconducts for fighting and possessing a weapon.  After reviewing the evidence, an administrative law judge (ALJ) held

2

a hearing, made findings of fact, and accepted Martin's guilty pleas on both charges. The following claims remain[2]:

      <u>Claim I.</u>  CO Randall violated his Eighth Amendment rights by spreading a rumor that Martin was a "snitch/rat" (Compl. at PageID.14, ¶ 28(1));

      <u>Claim II.</u>  CO Randall acted with deliberate indifference when his threat about Martin being "stabbed" turned to violence (*Id*. at PageID.15, ¶ 28(2)).; and,

      <u>Claim V.</u>  Sgt. Bennett violated Martin's Eighth Amendment rights for "inadequate supervision of subordinates", knew that Martin feared for his life, and acted with deliberate indifference (*Id*. at PageID.15-16, ¶ 30).

      For his relief, Martin seeks compensatory and punitive damages. *Id*. at PageID.16.

## II.  Legal standard

### A.  Summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

---

[2] *See* Order (ECF No. 46); Case Management Order (ECF No. 47, PageID.300).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Eighth Amendment claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

As discussed, plaintiff claims that CO Randall was deliberately indifferent to Martin's safety by calling him a rat and a snitch (Claim I), that Randall said that he "can't wait until they stab" Martin (Claim II), and that Sgt. Bennett was deliberately indifferent for failing to supervise his subordinates (*i.e.*, Randall) (Claim V). The basis of plaintiff's constitutional claim is that due to defendants' deliberate indifference, another inmate attacked Martin.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations and quotation marks omitted).  "Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Given this environment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis omitted).  "A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions[.]" *Id*. at 844-45 (internal citations omitted).  *See, e.g., Gilland v. Owens*, 718 F. Supp. 665, 688 (W.D. Tenn. 1989) (observing that the violent tendencies of inmates is not within the control of jail officials).

Courts recognize that "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).

> In order to establish liability under the Eighth Amendment for a prison official's failure to protect her, an inmate must demonstrate that the official was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude "that the official was subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Id*. at 829, 847, 114 S.Ct. 1970.

*Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).  "Generally, a single isolated attack on an inmate cannot give rise to a deliberate indifference claim because the inmate will be unable to show that officials were consciously aware of the risk of an attack." *McDuff v. Addis*, No. 1:17-cv-912, 2018 WL 3239491 at *3 (W.D. Mich. July 3, 2018) (citing *Lewis v. McLennan*, 7 Fed.

5

Appx. 373, 375 (6th Cir. 2001) (which affirmed dismissal of an Eighth Amendment claim because the plaintiff had not alleged any specific facts which would show that he was in danger of being assaulted by other prisoners). *See Stewart v. Love*, 696 F.2d 43, 44-45 (6th Cir. 1982) (a single, isolated attack was insufficient to state a failure to protect claim). Finally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The alleged Eighth Amendment violation in this case arose from CO Randall stating that Martin was a "rat" or a "snitch". According to Martin, Randall's statements put him at risk of being attacked from other inmates and in fact resulted in an inmate attacking him. "Labeling an inmate as [a rat] may constitute deliberate indifference to the inmate's safety." *See Clark v. Adams*, No. 2:22-cv-104, 2022 WL 2301952 at *10 (W.D. Mich. June 27, 2022). *See also*, *Comstock v. McCrary*, 273 F.3d 693, 699, n.2 (6th Cir. 2001) (acknowledging that being labeled a snitch could make the inmate a target for prison attacks). For Martin to prevail on his claim of deliberate indifference under the Eighth Amendment, Martin must establish that he suffered physical harm as a result of being labeled a rat or a snitch. *See Thompson v. Michigan Department of Corrections*, 25 Fed. Appx. 357, 359 (6th Cir. 2002) ("[Plaintiff's] claim that he was endangered by being labeled a snitch was unsupported by any allegation of resultant harm."). "Requests for damages . . . seek to compensate plaintiffs for past injuries." *Wilson*, 148 F.3d at 601. Even if a plaintiff's fears are legitimate, "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id*. (quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir.1996).

6

### C.     Discussion

Martin's injuries arose from the alleged "physical engagement" which occurred on April 25, 2021.  Defendants CO Randall and Sgt. Bennett seek summary judgment because Martin was not attacked due to their actions as alleged in Claims I, II and V.  *See* Defendants' Brief (ECF No. 52, PageID.320).  Defendants point out that at the Class I misconduct hearing related to the April 25, 2021 incident, an ALJ found that Martin had a weapon and initiated the fight with another prisoner.  Defendants contend that Martin is precluded from presenting different facts in this Court to establish that an inmate attacked him on April 25, 2021.  Defendants explain that:

> Martin was found guilty on the April 25, 2021, misconduct report which establishes that he was engaged in fighting and had attacked the other inmate with a knife. (Ex. B, Misconduct Packet.)  In addition to Martin's plea of guilty, the Hearing Officer specifically found that Martin stood up and started swinging with a sharpened piece of metal in his hand toward the other inmate. (*Id*.)  Martin admitted to fighting and that he possessed the weapon. (*Id*.)  Ultimately, Martin started the fight by taking the first swing and he had a weapon, therefore, he was never attacked due to any of the exhausted claims related to Randall attempting to label Martin a rat.  The Court must accept as true the findings made by the administrative law judge.  *Maben v Thelen*, 887 F3d 252, 259 (6th Cir. 2018).
>
> The reason the Court must accept those allegations as true is because a Class I hearing officer specifically found them to be true and found Martin to be guilty of the behavior listed in the reports. (*Id*. at PageID.275-291.) [sic]  *See Maben v Thelen*, 887 F3d 252, 259 (6th Cir. 2018) (quoting *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013)). The *Maben* holding, precludes Martin from claiming in this case that he did not engage in the behavior as alleged and found to have occurred in the misconduct report and hearing report.

*Id*. at PageID.317-318.

In *Maben*, the Sixth Circuit explained the requirements for giving preclusive effect to an MDOC Class I misconduct hearing:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity' "; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three

7

requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013) (internal citation and quotation marks omitted).

In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan major misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's factual finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id*. at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403-04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id*. at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id*. at 404-05 (internal citations and quotation marks omitted).

*Maben*, 887 F.3d at 259.

Here, the ALJ conducted a Class I major misconduct hearing consistent with the requirements set forth in *Peterson*. *See* Class I Misconduct Hearing Report (ECF No. 52-3, PageID.361). The ALJ reviewed the following "evidence/statements" in addition to the misconduct report for the charges of Fighting (014) and Possession of a weapon (029):

> Prisoner present via videoconference. Misconduct report and evidence read and reviewed with prisoner. As an initial matter, these two misconducts are properly joined onto one hearing report as they involve the same incident and time period. The prisoner indicates he is guilty to both charges. Hearing investigations consist of one page of photograph; one page from the charged prisoner; one page of mental health screening; one page of video summary and the surveillance video of the incident, held confidential to prevent release of fixed camera locations, limitations and capabilities. The contents are generally summarized for the prisoner. I note that the witness, prisoner Ford, is not necessary as the video shows

8

the weapon in prisoner Martin's hand and he is pleading guilty and admitting he possessed the weapon. The prisoner indicates at hearing that he was on the Jpay machine and they allwed [sic] an inmate to come out all dressed. He states that he came around and tried to run up on him, so he did fight back. He had nothing further. He was informed of the decision and sanctions at the conclusion of the hearing.

PageID.361.

The ALJ gave the following "Reasons for findings":

This Administrative Law Judge finds the reporting officer's statement to be credible, specific and persuasive. ALJ finds that the prisoner was engaged in a mutual physical confrontation, done in anger or with the intent to injure as is required for fighting by PD 03.03.105. Both prisoners were engaged in the fight and were not simply defending themselves by blocking blows, but were actively swinging fists (and a weapon) at and pushing each other. Video shows prisoner Martin at the Jpay machine. Prisoner Ford walks onto B wing and toward Martin. Martin stands up and swings toward Ford. The weapon can be seen in prisoner Martin's right hand as he again swings toward prisoner Ford. Martin enters the B wing showers and staff respond with tasers. Ford follows Martin into the shower and they then exchange closed-fist punches to each other. Additional staff arrive and place the prisoners into cuffs. Prisoner Martin admits at hearing that he engaged in the fight, as shown by video. His guilty plea is accepted to (014).

Per PD 03.03.105, possession of a weapon is any possession of an item designed or intended to threaten or cause physical harm. I find the prisoner was in possession of a five inch long piece of metal that was sharpened to a point. This weapon was found on the floor of the shower module. Further, video shows prisoner Martin with it in his hand. Martin admits he possessed the weapon. His guilty plea is accepted to (029). Turn over to MSP for disposition.

*Id*.

The ALJ's findings do not support Martin's claim that defendants allowed another prisoner to attack him. The ALJ's findings establish that Martin had a weapon and initiated an attack on the other prisoner, *i.e.*: that "[prisoner] Ford walks onto B wing and toward Martin"; that "Martin stands up and swings toward Ford"; that "[t]he weapon can be seen in prisoner Martin's right hand as he again swings toward prisoner Ford"; that "[b]oth prisoners were engaged in the fight and were not simply defending themselves by blocking blows, but were actively swinging

9

fists (and a weapon) at and pushing each other"; and, that Ford followed Martin into the shower where they "exchange closed-fist punches to each other". *Id*. PageID.361. Based on this record, the ALJ's factual findings preclude contrary findings in this federal lawsuit, *e.g.*, that defendants allowed prisoner Ford to initiate the attack against Martin. *See Peterson*, 714 F.3d at 917. In summary, Martin does not have a compensable Eighth Amendment claim against defendants for failing to protect him, because the other prisoner (Ford) did not attack Martin. Accordingly, defendants CO Randall and Sgt. Bennett should be granted summary judgment.[3]

### III.     Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 51) be **GRANTED** and that this case be **terminated**.


Dated: August 5, 2025                                              /s/ Ray Kent
                                                                               RAY KENT
                                                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] Defendants contend that, "To the extent that Martin is suing the Defendants in their official capacities, such claims are barred by the Eleventh Amendment." Defendants' Brief (ECF No. 52, PageID.335-336). Plaintiff's complaint does not seek relief against defendants in their official capacities (*e.g.*, injunctive relief). *See* Complaint (ECF No. 1, PageID.16-17) ("Prayer for Relief"). Accordingly, it is unnecessary to address this argument.